# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **DANIEL J. COBB,** | : | |
| | : | |
| *Plaintiff*, | : | Case No. 3:20-CV-01451-JGC |
| | : | |
| v. | : | **JUDGE JAMES G. CARR** |
| | : | |
| **GEORGE H. ROUSH IV, et al.** | : | |
| | : | |
| *Defendants*. | : | |
| | : | |
| | : | |

---

## OHIO ATTORNEY GENERAL DAVE YOST'S MOTION TO DISMISS

---

Now comes Ohio Attorney General Dave Yost and hereby moves this Court to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The reasons for this Motion are set forth in the attached Memorandum.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
ANDREW D. MCCARTNEY (0099853)*
    **Pro hac vice*
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAttorneyGeneral.gov
Andrew.McCartney@OhioAttorneyGeneral.gov

*Counsel for Defendant Ohio Attorney General
Dave Yost*

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................................ iii

Memorandum In Support ....................................................................................... 1

Issues To Be Decided ........................................................................................... 1

Summary Of The Argument .................................................................................. 1

Statement Of Facts ............................................................................................... 2

Standard Of Review .............................................................................................. 4

Argument .............................................................................................................. 5

    I.    The Complaint Should Be Dismissed for Lack of Subject Matter
    Jurisdiction. ................................................................................................ 5

        A.    Plaintiff Lacks Standing Because He Has No Concrete
        Injury. ............................................................................................ 5

        B.    Plaintiff's Claims Are Not Ripe. .................................................... 8

    II.    The Complaint Should Be Dismissed for Failure To State a Claim
    Upon Which Relief Can Be Granted. ....................................................... 9

        A.    The Eleventh Amendment and Federal Pleading Standards
        Bar Plaintiff's Claims Against the Ohio Attorney General. ...................... 9

        B.    On the Merits, Plaintiff Cannot Mount a Facial Overbreadth
        Challenge to Ohio's Anti-Coercion Law. ................................... 11

            1.    Ohio's anti-coercion law does not even implicate the
            First Amendment because it prohibits only
            unprotected speech or conduct. ...................................... 12

            2.    In any event, Ohio's anti-coercion statute is not
            substantially overbroad. ............................................... 14

            3.    Any as-applied First Amendment challenge also
            fails. ............................................................................. 15

        C.    Plaintiff's Due Process Vagueness Claims Similarly Fail. ...................... 16

Conclusion .......................................................................................................... 18

Certificate Of Service ......................................................................................... 19

Certificate Of Compliance .................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am. Library Ass'n v. Barr,*
    956 F.2d 1178 (D.C. Cir. 1992) ...................................................................6

*Animal Legal Def. Fund v. Wasden,*
    878 F.3d 1184 (9th Cir. 2018) .................................................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................4, 10

*Bright v. Gallia County,*
    753 F.3d 639 (6th Cir. 2014). ...................................................................4

*Children's Healthcare is a Legal Duty v. Deters,*
    92 F.3d 1412 (6th Cir. 1996) ...............................................................9, 10

*Cicco v. Stockmaster,*
    89 Ohio St.3d 95 (Ohio 2000)................................................................10

*Colautti v. Franklin,*
    439 U.S. 379 (1979)................................................................................18

*Connection Distrib. Co. v. Holder,*
    557 F.3d 321 (6th Cir. 2009) .........................................................8, 11, 15

*D'Ambrosio v. Marino,*
    747 F.3d 378 (6th Cir. 2014) ...........................................................4, 5, 17

*Diallo v. Adducci,*
    444 F. Supp. 3d 815 (N.D. Ohio 2020)....................................................4

*DLX, Inc. v. Kentucky,*
    381 F.3d 511 (6th Cir. 2004) ...................................................................9

*Fieger v. Mich. Supreme Court,*
    553 F.3d 955 (6th Cir. 2009) ...........................................................5, 7, 8

*Garrison v. Louisiana,*
    379 U.S. 64 (1964)............................................................................12, 14

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972)................................................................................17

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010)....................................................................................17

**Cases**          **Page(s)**

*McDonald v. Smith*,
    472 U.S. 479 (1985)..........................................................................................12

*Moir v. Greater Cleveland Regional Transit Auth.*,
    895 F.2d 266 (6th Cir. 1990) ...........................................................................4

*Morrison v. Bd. of Edn.*,
    521 F.3d 602 (6th Cir. 2008) ......................................................................5, 6, 7

*N.Y. State Club Ass'n v. City of New York*,
    487 U.S. 1 (1988)..............................................................................................15

*Nat'l Fed. of Indep. Bus. v. Sebelius*,
    132 S. Ct. 2566 (2012).....................................................................................16

*Norton v. Ashcroft*,
    298 F.3d 547 (6th Cir. 2002) ............................................................................8

*Norton v. Jennings*,
    887 F.2d 265 (6th Cir. 1989) ............................................................................5

*People v. Downey*,
    458 N.E.2d 160 (Ill. App. Ct. 1983) ...........................................................13, 15

*Port Auth. Trans-Hudson Corp. v. Feeney*,
    495 U.S. 299 (1990).........................................................................................9

*Posner v. Lewis*,
    965 N.E.2d 949 (N.Y. 2012) ..........................................................................13

*R.A.V. v City of St. Paul*,
    505 US 377 (1992)...........................................................................................13

*Screws v. United States*,
    325 U.S. 91 (1945) ..........................................................................................16

*Speet v. Schuette*,
    726 F.3d 867 (6th Cir. 2013) ..........................................................................11

*Thaddeus-X v. Blatter*,
    175 F.3d 378 (6th Cir. 1999) ..........................................................................16

*Top Flight Entm't, Ltd. v. Schuette*,
    729 F.3d 623 (6th Cir. 2013) ............................................................................9

*United States v. Ackell*,
    No. 15-cr-123-01-JL, 2017 U.S. Dist. LEXIS 105095 (D.N.H. July 7, 2017) .................14, 17

**Cases**                                                                    **Page(s)**

*United States v Alvarez*,
    567 U.S. 709 (2012) ...................................................................................12

*United States v. Avant*,
    907 F.2d 623 (6th Cir. 1990) .....................................................................17

*United States v. Bailey*,
    444 U.S. 394 (1980) ...................................................................................13

*United States v. Caseer*,
    399 F.3d 828 (6th Cir. 2005) .....................................................................16

*United States v. Cherry*,
    938 F.2d 748 (7th Cir. 1991) .....................................................................18

*United States v. Dettra*,
    No. 99-3667, 2000 U.S. App. LEXIS 33715 (6th Cir. Dec. 15, 2000)...........17, 18

*United States v. Jeffries*,
    692 F.3d 473 (6th Cir. 2012) .....................................................................13

*United States v. Powell*,
    423 U.S. 87 (1975).....................................................................................17

*United States v. Ritchie*,
    15 F.3d 592 (6th Cir. 1994) .........................................................................4

*United States v. Stevens*,
    559 U.S. 460 (2010)...................................................................................12

*United States v. Walker*,
    665 F.3d 212 (1st Cir. 2011).......................................................................13

*United States v. Welch*,
    327 F.3d 1081 (10th Cir. 2003) ..................................................................18

*Voting for Am., Inc. v. Steen*,
    732 F.3d 382 (5th Cir. 2013) .....................................................................16

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)...................................................................................12

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989)......................................................................................9

*Ex parte Young*,
    209 U.S. 123 (1908)................................................................................9, 10

**Statutes**                                                                          **Page(s)**

R.C. 2905.12(A) ....................................................................................................18

R.C. § 2712.12 ......................................................................................................10

R.C. § 2721.12 ......................................................................................................10

R.C. § 2905.12(A) .................................................................................................13

R.C. §  2905.12(A)(3) .............................................................................................2

R.C. § 2905.12(A)(3) .......................................................................................14, 16

R.C. § 2905.12(C) .................................................................................................13

**Other Authorities**                                                                 **Page(s)**

Fed. Civ. Rule 12(b)(1) ............................................................................................4

Fed. Civ. Rule 12(b)(6) ............................................................................4, 5, 9, 10

U.S. Const., First Amendment ........................................................................ *passim*

U.S. Const., Eleventh Amendment ...................................................................2, 5, 9

U.S. Const., Art. III .................................................................................................5

## MEMORANDUM IN SUPPORT

### ISSUES TO BE DECIDED

1.      Whether the Complaint should be dismissed for lack of subject matter under Federal Rule

of Civil Procedure 12(b)(1) where Plaintiff pled to and was convicted of Disorderly

Conduct and now alleges that he is afraid he will be prosecuted for different activity under

a different statute.

2.      Whether the Complaint should be dismissed for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6) where the Complaint contains no allegations connecting the

Ohio Attorney General to the harm alleged and where Plaintiff cannot show that Ohio's

anti-coercion statute infringes on a substantial amount of protected speech or is incapable

of reasonable interpretation.

### SUMMARY OF THE ARGUMENT

This lawsuit is a hypothetical dispute, so the Court lacks subject matter jurisdiction.  After

yelling at a Toledo police officer for using a handheld speed camera, Plaintiff pled to and was

convicted of Disorderly Conduct.  Over a year later, Plaintiff made derogatory comments about

the officer on social media, calling him a "yellow bellied fake cop."  The officer told Plaintiff that

he had misidentified the officer, that the officer's children were experiencing harassment because

of Plaintiff's derogatory social-media posts, and that he would press charges if the inaccurate posts

were not removed.  Plaintiff deleted one of the offending Facebook posts and informed the officer,

who thanked him and noted that he would be retiring from the police department later that year in

part because of concerns that Plaintiff also shared.  Plaintiff now seeks to use the officer's initial

statement about pressing charges and Plaintiff's prior prosecution for Disorderly Conduct to

invalidate a *different* statute (Ohio's anti-coercion law) that he alleges violates the First

Amendment and the Due Process Clause.  Because there is no imminent threat that he will be

1

prosecuted for coercion, Plaintiff lacks standing to challenge Ohio's anti-coercion statute.  For similar reasons, the lawsuit is also not ripe.

Separately and independently, the Complaint fails to state a claim upon which relief can be granted.  First, the Eleventh Amendment bars any claims against the Ohio Attorney General because Plaintiff has failed to allege any connection between the Attorney General and the harm alleged.  Second, the First Amendment and due process vagueness claims lack legal bases.  Even if Plaintiff somehow had standing to bring these claims (and he does not), he would not be able to show that Ohio's anti-coercion statute violates the First Amendment.  Ohio's anti-coercion law is similar to a blackmail or extortion statute that does not implicate protected speech, applies only to those who act with the purpose of improperly coercing another, and includes a host of affirmative defenses.  Regardless, Plaintiff cannot show that the law implicates protected speech on a scale large enough to be substantially overbroad.  For similar reasons, the statute easily survives Plaintiff's due process vagueness challenge.  The Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

In 2019, Plaintiff Daniel J. Cobb was charged, pled to, and found guilty of Disorderly Conduct after yelling at Toledo police officer George Roush and taking pictures of Mr. Roush as he used a handheld speed camera to identify potential speeders.  Compl. ¶¶ 15, 18, ECF No. 1; Compl. Exh. A at p. 2, ECF No. 1-1.  This Disorderly Conduct charge was amended from an initial charge of coercion under Ohio's anti-coercion statute, Revised Code section 2905.12(A)(3).  Compl. ¶¶ 15, 18, ECF No. 1; Compl. Exh. A at p. 2, ECF No. 1-1.  In a related charge for Obstructing Official Business (this charge was later dismissed), Mr. Roush alleged that:

> [Plaintiff] stopped a blue compact Jeep SUV in the middle of the road adjacent to the officer[']s patrol car . . . . [Plaintiff] started taking photos of the officer who was engaged in traffic enforcement with a speed camera.  [Plaintiff] started shouting at the officer to distract him.  The officer was forced to stop his enforcement and

> address the possible safety concern.  [Plaintiff] then fled and was later identified.
> This was at least the third occasion that this has occurred.

Compl. Exh. A at p. 6, ECF No. 1-1; *see also* Compl. ¶ 18, ECF No. 1.  Plaintiff was required to

pay court costs after being found guilty of Disorderly Conduct.  Compl. ¶ 18, ECF No. 1; Compl.

Exh. A at p. 2, ECF No. 1-1.

About a year later, Plaintiff posted comments in the Facebook comment section of a Toledo

Blade Facebook article concerning Toledo police officers' use of handheld speed cameras next to

the freeway.  Compl. ¶ 19, ECF No. 1.  Among other things, Plaintiff stated: "Rousch [sic] isn't

even a real cop. . . He thinks he is a hero. . . Cant wait until he falls!!  Bet they give him a 12

camera salute. . . ."  Compl. ¶ 20, ECF No. 1; *see also* Compl. Exh. D at p. 3, ECF No. 1-4.

Another one of Plaintiff's Facebook posts referred to Mr. Roush as a "yellow bellied fake cop."

Compl. ¶ 21, ECF No. 1.  Mr. Roush later allegedly sent Plaintiff a message through Facebook

Messenger stating that he was not the officer on promedica, that Mr. Roush's children were

experiencing harassment because of Plaintiff's comments, that Mr. Roush was required to do photo

enforcement, and that "[i]f you do not remove the post with my name on it, I will go down to the

prosecutor['s] office and file charges.  A second offense will not be good for you."  Compl. ¶ 22,

ECF No. 1; *see also* Compl. Exh. E at p. 2, ECF No. 1-5.  Plaintiff allegedly responded by saying

he would remove the post when he got home, and then later stated that one post had been deleted,

but that he could not remove the Toledo Blade comment via cell phone, so he would attend to that

comment when he returned home that evening.  Compl. Exh. E. at p. 3, ECF No. 1-5.  Mr. Roush

responded, "Thank you," and then noted:

> Btw, I retire in July.  This stuff is part of the reason I am ending my career. . . . I
> am stuck in the middle. . . . The decision to do photo enforcement is well above my
> pay grade and I am not involved in that process.  After I retire, I will make myself
> available to talk about the program.  I think your group could do much but going
> after the guy at the bottom is not the solution.

*Id.* at pp. 3-4. Plaintiff apparently responded: "Left group after last incident. Will find statute later for you where they are against Toledo own home rule. . . . Will take down comments as well. Gotta climb a tree. Later." *Id.* at p. 5.

Mr. Roush has not pressed charges against Plaintiff for these Facebook posts. Compl. ¶ 25, ECF No. 1.

## STANDARD OF REVIEW

"Where subject matter jurisdiction is challenged pursuant to [Federal Rule of Civil Procedure] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The Rule 12(b)(1) motion must be considered first, as the Rule 12(b)(6) challenge becomes moot if the court lacks subject matter jurisdiction. *Id.* A Rule 12(b)(1) motion may assert either a facial or a factual challenge. *Diallo v. Adducci*, 444 F. Supp. 3d 815, 819 (N.D. Ohio 2020) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "While facial attacks challenge the sufficiency of the pleading itself, factual attacks challenge the factual existence of subject-matter jurisdiction." *Id.* (citing *Ritchie*, 15 F.3d at 598). With a facial attack, "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Ritchie*, 15 F.3d at 598.

To state a claim and survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts that, taken as true, state a plausible claim for relief. *Bright v. Gallia County*, 753 F.3d 639, 652 (6th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss under Rule 12(b)(6), the court construes the facts in the light most favorable to the non-moving party and accepts as true "all well-pled factual allegations." *D'Ambrosio v. Marino*, 747 F.3d 378,

383 (6th Cir. 2014).  "Still, this court need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  *Id.* (internal quotation marks omitted).  In addition, a complaint may be dismissed under Rule 12(b)(6) where Eleventh Amendment immunity bars claims against a state defendant.  *See, e.g.*, *Norton v. Jennings*, 887 F.2d 265, 265 (6th Cir. 1989).

## ARGUMENT

### I.    The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction.

#### A.    Plaintiff Lacks Standing Because He Has No Concrete Injury.

Plaintiff lacks standing to bring any of his claims because he lacks a cognizable injury-in-fact.  "That a litigant must establish standing is a fundamental element in determining federal jurisdiction over a 'case' or 'controversy' as set forth in Article III of the Constitution."  *Morrison v. Bd. of Edn.*, 521 F.3d 602, 608 (6th Cir. 2008).  To satisfy the Constitution's standing requirement, a party must establish that:

> (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Fieger v. Mich. Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009) (citation omitted).  Moreover, "[i]n the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing.  The plaintiff must allege and/or demonstrate actual present harm or a significant possibility of future harm."  *Id.* (citation omitted).  "[T]he overbreadth doctrine does not eviscerate the standing requirement, which is a *constitutional* mandate that is absolute and irrevocable."  *Id.* at 961 (internal quotation marks omitted).

Subjective chill—that is, a speaker allegedly curtailing her speech out of fear—is generally insufficient to show injury-in-fact.  "With respect to the standing of First Amendment litigants, the

Supreme Court is emphatic: 'Allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Morrison*, 521 F.3d at 608 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)).  Thus, "where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists." *Id.* at 609 (collecting cases).  To have standing, "a litigant alleging chill must still establish that a concrete harm—i.e., enforcement of a challenged statute—occurred or is imminent." *Id.* at 610; *see also Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1193 (D.C. Cir. 1992) ("[W]hether plaintiffs have standing . . . depends on how likely it is that the government will attempt to use [the challenged] provisions against them—that is, on the threat of enforcement—and not on how much the prospect of enforcement worries them.").

Plaintiff cannot allege a sufficient injury-in-fact for several key reasons:

***First***, Plaintiff lacks any threshold concrete injury—separate from mere subjective chill— that would give him standing to challenge Ohio's anti-coercion law.  Crucially, while Plaintiff was initially charged under the anti-coercion statute he now challenges, this charge was amended to a charge of Disorderly Conduct, to which Plaintiff pled and for which he was convicted.  *See* Compl. ¶ 18, ECF No. 1; Compl. Exh. A at p. 2, ECF No. 1-1.  This Disorderly Conduct prosecution occurred after Plaintiff allegedly yelled at police officer George Roush and engaged in other disruptive behavior while Mr. Roush was performing his duties as a police officer.  *See* Compl. ¶¶ 15, 18, ECF No. 1; Compl. Exh. A at p. 6, ECF No. 1-1.  Yet Plaintiff is not challenging the Disorderly Conduct statute.  Instead, he is attempting to invalidate a separate statute that quickly became irrelevant in his prosecution for and conviction of Disorderly Conduct.

***Second***, Plaintiff cannot show that the previous Disorderly Conduct prosecution was connected to protected First Amendment activity, and so he cannot show any imminent threat of

prosecution for protected speech.  Because Plaintiff was not prosecuted and convicted under Ohio's anti-coercion law, any concrete injury would have to be an imminent threat of prosecution for protected speech.  *Morrison*, 521 F.3d at 610.  But there is no such indication.  Mr. Roush has not pressed charges for Plaintiff's 2020 social-media posts, and the pleadings indicate that he is highly unlikely to do so.  Mr. Roush initially made a nebulous statement that he might "file charges" (without mentioning any particular statute) based on Plaintiff's allegedly false and derogatory social-media posts.  Compl. ¶ 22, ECF No. 1; Compl. Exh. E at p. 2, ECF No. 1-5. Plaintiff responded by removing one of the offensive and allegedly inaccurate Facebook posts. Compl. ¶ 23, ECF No. 1; Compl. Exh. E at p. 3, ECF No. 1-5.  Mr. Roush said he was planning to retire from the police department in July 2020 because of concerns similar to those Plaintiff voiced. Compl. Exh. E at pp. 3-4, ECF No. 1-5.  And Plaintiff told Mr. Roush that he had left the Facebook group that protested police cameras.  Compl. Exh. E at p. 5, ECF No. 1-5; *see also Fieger*, 553 F.3d at 965 (holding that plaintiff's contention that he suffered "a significant possibility of future harm because he ha[d] twice been subjected to disciplinary proceedings under the rules" did not confer standing where plaintiff "no longer host[ed] the radio show which served as the medium for his sanctioned comments" and where the makeup of the Michigan Supreme Court had changed).  Thus, the pleadings themselves undermine the assertion that Plaintiff is threatened with the imminent enforcement of Ohio's anti-coercion statute based on his Facebook activity.

**Third**, even if the prior Disorderly Conduct prosecution and Mr. Roush's nebulous statement that he might "file charges" could constitute a concrete injury in some circumstances, it is insufficient here.  "While previous sanctions might, of course, be evidence bearing on whether there is a real and immediate threat of repeated injury[,] where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief."  *Fieger*, 553 F.3d at 966

(internal quotation marks omitted).  "[I]t is incumbent upon plaintiffs to articulate something more than a generalized, subjective 'chilling' of speech to establish the required injury-in-fact."  *Id.* at 965.  Plaintiff has not and cannot show any imminent threat of prosecution under Ohio's anti-coercion statute for his Facebook activity.  Therefore, Plaintiff lacks standing.

### B.     Plaintiff's Claims Are Not Ripe.

Separately and independently—but for similar reasons—Plaintiff's claims are not ripe.  To meet their burden of showing their claims are ripe for review, plaintiffs must show:

> (1) that the claim is fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass and (2) that the hardship to them of withholding court consideration outweighs the costs of allowing litigation by hypothetical[.]

*Connection Distrib. Co. v. Holder*, 557 F.3d 321, 342 (6th Cir. 2009) (internal quotation marks omitted).

"Ripeness doctrine exists to ensure that courts decide only existing, substantial controversies, not hypothetical questions or possibilities."  *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (internal quotation marks omitted).  "For pre-enforcement challenges, a case is ordinarily ripe for review only if the probability of the future event occurring is substantial and of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* (internal quotation marks omitted).  "In a First Amendment pre-enforcement challenge, the inquiry usually focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute."  *Id.*

Plaintiff's challenge to Ohio's anti-coercion statute is not ripe because the dispute is entirely hypothetical at this point.  As discussed in detail above, there is no indication that the statute will be enforced against Plaintiff to infringe on any right to post on Facebook.  Plaintiff's claims therefore do not "concern[] a dispute that is likely to come to pass."  *Connection Distrib.*

*Co.*, 557 F.3d at 342 (claim not ripe where the Attorney General had not yet attempted to obtain particular records from individuals). Thus, there is no subject matter jurisdiction not only because of the lack of standing but also because the dispute is not ripe.

## II. The Complaint Should Be Dismissed for Failure To State a Claim Upon Which Relief Can Be Granted.

### A. The Eleventh Amendment and Federal Pleading Standards Bar Plaintiff's Claims Against the Ohio Attorney General.

Even assuming there is subject matter jurisdiction (which there is not), the Complaint against the Ohio Attorney General should be dismissed pursuant to Rule 12(b)(6) because it is barred by the Eleventh Amendment. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 526 n.13 (6th Cir. 2004). Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (internal quotation marks omitted). "[A] suit against a state official in his or her official capacity is . . . . no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Under *Ex parte Young*'s narrow exception to Eleventh Amendment immunity, state officials must have a sufficient connection to the alleged federal law violations before they can be named as party defendants. *See Ex parte Young*, 209 U.S. 123, 157 (1908) ("The fact that the state officer by virtue of his office has *some connection* with the enforcement of the act is the important and material fact . . . ." (emphasis added)). Thus, "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). "Courts have not read *Young* expansively" and have routinely dismissed state officials where, as here, the Complaint lacks allegations of the requisite enforcement nexus between the challenged statute and the state official's actions. *Id.*; *see, e.g., Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634

(6th Cir. 2013) (affirming dismissal of Michigan Attorney General as a defendant because a different state officer was the relevant enforcement officer); *Deters*, 92 F.3d at 1417 (dismissing Ohio Attorney General because she had "no connection to the enforcement of the [challenged] statutes" and noting that enforcement was delegated to local prosecutors).

Here, Plaintiff's suit against the Attorney General fails under *Ex parte Young* because it alleges no facts demonstrating a connection between Attorney General Yost and the harm alleged. Indeed, the only allegation in the Complaint is that Attorney General Yost is "the chief legal officer of the State of Ohio" and that "[a]mong his duties is the requirement that he advise state and local officials on questions of Ohio Law." Compl. ¶ 3, ECF No. 1. However, it is well established that "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Deters*, 92 F.3d at 1416 (internal quotation marks omitted). Therefore, the Complaint is insufficient to sustain any claim against Attorney General Yost because it fails to allege a connection between the Attorney General and the harm alleged.[1]

For substantially the same reasons that it fails to show the requisite connection between Attorney General Yost and the harm alleged under *Ex Parte Young*, the Complaint fails to state any claim against the Attorney General under federal pleadings standards. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For the reasons discussed above, the Complaint fails to do so.

---

[1] Plaintiff perhaps names Attorney General Yost as a party because he seeks, among other remedies, a declaratory judgment—but that is not enough to state a claim. Under R.C. 2721.12, a party challenging the constitutionality of Ohio law must *serve* the Attorney General. But R.C. 2712.12 does not require the Attorney General to be *named as a party*. *Cicco v. Stockmaster*, 89 Ohio St.3d 95, 99 (Ohio 2000).

**B.     On the Merits, Plaintiff Cannot Mount a Facial Overbreadth Challenge to Ohio's Anti-Coercion Law.**

"A facial challenge to a law is no small matter."  *Connection Distrib. Co.*, 557 F.3d at 335. With a facial challenge, "[a]t stake is not an attempt to invalidate the law in a discrete setting but an effort to leave nothing standing, to invalidate the law in each of its applications, to take the law off the books completely."  *Id.* (internal citation and quotation marks omitted).  This "momentous and consequential" relief is an "exceptional remedy."  *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (internal quotation marks omitted).  To obtain facial relief, a plaintiff ordinarily has the burden to establish that there are no set of circumstances under which a statute could be valid.  *Id.*  Within the First Amendment context, however, the plaintiff has the burden to show that the statute is substantially overbroad.  *Id.*  To meet the burden of establishing overbreadth, the plaintiff must show that the challenged provision prohibits "a substantial amount of protected speech both in an absolute sense and relative to the statute's plainly legitimate sweep."  *Id.* (internal quotation marks omitted). "[T]he question is not whether the claimant can imagine some 'overbreadth'; it is whether the claimant can show 'substantial overbreadth.'"  *Connection Distrib. Co.*, 557 F.3d at 337.

"Even in free-speech cases, . . . facial invalidation of a statute remains 'strong medicine that is not to be casually employed.'"  *Id.* at 336 (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)).  "And even in this setting, facial challenges remain 'disfavored' because they frequently require courts to 'anticipate a question of constitutional law in advance of the necessity of deciding it' or to 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'"  *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)).  "[F]acial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution."  *Wash. State Grange*, 552 U.S. at 450.

11

Here, Plaintiff cannot meet the heavy burden of showing that Ohio's anti-coercion law is substantially overbroad either in an absolute sense or relative to its plainly legitimate sweep.

1.    ***Ohio's anti-coercion law does not even implicate the First Amendment because it prohibits only unprotected speech or conduct.***

Ohio's anti-coercion law does not implicate constitutionally protected speech.  It is well settled that there are certain categories of speech "the prevention and punishment of which have never been thought to raise any Constitutional problem."  *United States v. Stevens*, 559 U.S. 460, 469 (2010) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)).  Among these categories of speech are advocacy intended to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, fighting words, child pornography, fraud, true threats, and speech presenting an imminent threat that the government can prevent.  *United States v Alvarez*, 567 U.S. 709, 717 (2012).

These categories of unprotected speech do not disappear simply because political speech is involved.  "That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution."  *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964); *see, e.g.*, *McDonald v. Smith*, 472 U.S. 479, 485 (1985) (holding that the First Amendment did not protect libelous statements made to the President regarding appointment of a U.S. Attorney); *Garrison*, 379 U.S. at 75 (recognizing the importance of the tort of defamation to counteract false statements in the context of political debate).

Ohio's anti-coercion law operates like a blackmail or extortion statute, prohibiting someone from "[e]xpos[ing] or threaten[ing] to expose any matter tending to subject any person to hatred, contempt, or ridicule, to damage any person's personal or business repute, or to impair any person's credit"—but only if the person acts "with *purpose* to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice."  R.C.

2905.12(A) (emphasis added).  In other words, the statute includes a specific-intent requirement, further limiting prosecution.  *See United States v. Bailey*, 444 U.S. 394, 405 (1980) ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent . . . .").  Moreover, the statute contains a number of affirmative defenses.  It is an affirmative defense if the person's conduct was reasonable and the person acted to "[c]ompel[] another to refrain from misconduct," to "[p]revent[] or redress[] a wrong or injustice," to "[p]revent[] another from taking action for which the actor reasonably believed the other person to be disqualified," or to "[c]ompel[] another to take action that the actor reasonably believed the other person to be under a duty to take."  R.C. 2905.12(C).

Thus, Ohio's anti-coercion law is a limited statute aimed at addressing a particular type of harm—improper coercion—and thus it "does not restrict a citizen's right of free speech, but merely restricts the exercise of such a right to effect an extortion."  *People v. Downey*, 458 N.E.2d 160, 163 (Ill. App. Ct. 1983) (statute that prohibited threatening to expose others to "hatred, contempt, or ridicule" was neither vague nor overbroad).  "Words often are the sole means of committing crime—think bribery, perjury, blackmail, fraud.  Yet the First Amendment does not disable governments from punishing these language-based crimes, . . . many of which pre-dated the First Amendment."  *United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012) (citation omitted).  For example, "it has been consistently held that blackmail and extortion are not protected speech[.]"  *Posner v. Lewis*, 965 N.E.2d 949, 953 (N.Y. 2012) (citing *R.A.V. v City of St. Paul*, 505 U.S. 377, 420 (1992) (Stevens, J., concurring)); *see also United States v. Walker*, 665 F.3d 212, 227 (1st Cir. 2011) ("The law is crystal clear that threats are not constitutionally protected speech." (citing *R.A.V.*, 505 U.S. at 388)).

13

Tellingly, Plaintiff comes close to conceding that Ohio's anti-coercion statute does not implicate constitutionally protected speech under binding case law, as he contends that "[t]o the extent *Garrison* [*v. Louisiana*, 379 U.S. 64 (1964)] bars Plaintiff's facial or as applied First Amendment claims, it should be overruled." Compl. ¶ 54, ECF No. 1. Because Ohio's anti-coercion statute does not implicate protected speech, this Court "need go no further." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194 (9th Cir. 2018) (quoting *Cornelius v. NAACP Legal Def. Fund & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

### 2.      *In any event, Ohio's anti-coercion statute is not substantially overbroad.*

Even assuming that Ohio's anti-coercion statute implicates some constitutionally protected speech, the statute's carefully crafted limitations undercut any argument that it is substantially overbroad relative to its plainly legitimate sweep. The primary effect of Ohio's anti-coercion statute is to prohibit threats and conduct—made with the specific intent to coerce—that aim to force someone to take or refrain from actions regarding which the victim has a lawful freedom of choice. *See* R.C. 2905.12(A)(3). To the extent the statute implicates speech that would not count as blackmail, extortion, speech incident to criminal conduct, threats, defamation, or another recognized category of unprotected speech, that incidental application to protected speech would be far from substantial—and certainly not relative to the large swath of unprotected speech that falls within the statute's plainly legitimate sweep.

Moreover, the statute's specific-intent requirement further limits the statute's application, making the possibility that it could apply to protected speech even less likely and undercutting any argument that the statute is substantially overbroad relative to its plainly legitimate sweep. *See United States v. Ackell*, No. 15-cr-123-01-JL, 2017 U.S. Dist. LEXIS 105095, at *26 (D.N.H. July 7, 2017) ("[Ackell's] facial overbreadth challenge likewise fails because he has not shown that the statute, which criminalizes courses of conduct undertaken with specific intent, criminalizes a

substantial amount of protected expressive activity."); *Downey*, 458 N.E.2d at 163 (statute not overbroad or vague where "[t]he scope of the prosecution under the statute is also limited by the fact that the underlying threat must be intended to cause another to perform or omit the performance of some act").

The "law-enforcement vacuum" here further undercuts Plaintiff's overbreadth argument. *See Connection Distrib. Co.*, 557 F.3d at 339. Plaintiff has the burden to "demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally." *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988). One factor to consider in assessing the "realistic danger" of inhibiting speech is "the past practices and future prospects of enforcement." *Connection Distrib. Co.*, 557 F.3d at 341. But Plaintiff himself admits that "criminal defamation prosecutions remain relatively rare," and merely asserts that "criminal defamation laws *could* become regular tools for policing online discourse." Compl. ¶¶ 10-11, ECF No. 1 (emphasis added). As discussed above, Plaintiff was not prosecuted and convicted under Ohio's anti-coercion statute. Thus, the "law-enforcement vacuum" here "mak[es] this debate all the more abstract and all the more vulnerable to inaccurate rather than accurate judicial decision-making." *Connection Distrib. Co.*, 557 F.3d at 339.[2]

### 3. *Any as-applied First Amendment challenge also fails.*

Plaintiff also cannot show that Ohio's anti-coercion law is unconstitutional as applied to him. First of all, the statute was *not* really applied to him at all. The initial charge under R.C.

---

[2] Even if the Court determined that Ohio's anti-coercion statute was substantially overbroad relative to its plainly legitimate sweep, this would not merit invalidating the entire statute. "A court may enjoin the unconstitutional *applications* of the law while preserving the other valid applications of the law." *Connection Distrib. Co.*, 557 F.3d at 342 (collecting cases). Or—as the Sixth Circuit did in *Connection Distributing Co. v. Holder*—"a court may assume for the sake of argument that certain applications of the law would be unconstitutional but still reject a facial challenge." *Id.* (collecting cases).

2905.12(A)(3) was amended to a charge of Disorderly Conduct (a different statute), to which Plaintiff pled and under which he was convicted.  Compl. ¶ 18, ECF No. 1.  Mr. Roush's nebulous comment a year later about potentially filing charges based on Plaintiff's allegedly false and injurious Facebook activity is thus irrelevant.  Assuming for the sake of argument that all of Plaintiff's social-media activity counted as protected speech, Plaintiff cannot show that an "adverse action" was taken against him because of his social-media activity.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (discussing the elements of a First Amendment retaliation claim).  Plaintiff was convicted of disorderly *conduct*—not coercion based on Facebook posts.  Compl. ¶ 18, ECF No. 1; Compl. Exh. A at p. 2, ECF No. 1-1.  Plaintiff cannot use this prior conviction under a different statute as a hook for making a First Amendment retaliation claim and challenging Ohio's anti-coercion law.

### C.    Plaintiff's Due Process Vagueness Claims Similarly Fail.

The classification of a statute as void for vagueness is a significant matter.  *See United States v. Caseer*, 399 F.3d 828, 838 (6th Cir. 2005) (discussing federal statutes).  The U.S. Supreme Court "has consistently favored that interpretation of legislation which supports its constitutionality."  *Screws v. United States*, 325 U.S. 91, 98 (1945); *see also Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013) ("A federal court should not lightly enjoin the enforcement of a state statute. . . . The determination of whether a democratically enacted statute is constitutional on its face requires that 'every reasonable construction must be resorted to in order to save a statute from unconstitutionality.'" (citations omitted) (quoting *Nat'l Fed. of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2594 (2012))).  "The standard for vagueness in a criminal statute is if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement."  *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990).  By contrast, a statute is not vague if it is subject to "reasonable interpretation."

*United States v. Dettra*, No. 99-3667, 2000 U.S. App. LEXIS 33715, at *9 (6th Cir. Dec. 15, 2000) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 112 (1972)).  The fact that a legislature could have chosen "clearer and more precise language equally capable of achieving the end which it sought" does not mean that a statute is unconstitutionally vague.  *United States v. Powell*, 423 U.S. 87, 94 (1975) (internal quotation marks omitted).  A law is therefore permitted to have "flexibility and reasonable breadth, rather than meticulous specificity."  *See Grayned*, 408 U.S. at 110.

As a threshold matter, Plaintiff's vagueness challenge fails because the Complaint lacks non-conclusory allegations regarding how Ohio's anti-coercion statute was vague *as applied to him*.  A court must "consider whether a statute is vague as applied to the particular facts at issue, for a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (internal quotation marks omitted); *see also Ackell*, 2017 U.S. Dist. LEXIS 105095, at *36 ("Ackell's facial overbreadth challenge can proceed despite the absence of an as-applied challenge because of its relation to the First Amendment.  The law recognizes no such exception for a vagueness challenge." (internal quotation marks omitted)).  Here, Plaintiff cannot allege that Ohio's anti-coercion statute is vague as applied to him because he was prosecuted for and convicted of Disorderly Conduct—not coercion.[3]

Regardless, the statute easily survives a vagueness challenge.  Nothing in the text of the statute renders it impervious to "reasonable interpretation."  *Dettra*, 2000 U.S. App. LEXIS 33715, at *9.  Indeed, the plain text of the statute prohibits conduct ("expos[ing]") or threats ("threaten[ing]") done with the "purpose to coerce another" into taking or refraining from action without justification.  R.C.

---

[3] Plaintiff includes the bald assertion that Ohio's anti-coercion statute is vague "both on its face and as applied" but the Court need not accept this conclusory allegation.  *D'Ambrosio*, 747 F.3d at 383; *see* Compl. ¶ 29, ECF No. 1.

2905.12(A).  The statute's specific-intent requirement also undercuts any vagueness challenge.  The Supreme Court has long held that "the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979).  Thus, "[a] vagueness challenge to a penal statute based on insufficient notice rarely succeeds where the requisite mental state is one of purpose or specific intent." *United States v. Welch*, 327 F.3d 1081, 1096 (10th Cir. 2003); *see also United States v. Cherry*, 938 F.2d 748, 754 (7th Cir. 1991) ("When the government must prove intent and knowledge, these requirements do much to destroy any force in the argument that application of the statute would be so unfair that it must be held invalid." (internal quotation marks omitted)).

## CONCLUSION

For these reasons, the Complaint should be dismissed in its entirety.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*

JULIE M. PFEIFFER (0069762)
ANDREW D. MCCARTNEY (0099853)*
      **Pro hac vice*
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAttorneyGeneral.gov
Andrew.McCartney@OhioAttorneyGeneral.gov

*Counsel for Defendant Ohio Attorney General Dave Yost*

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Ohio Local Civil Rule 7.1(f), I hereby certify that this memorandum adheres to the page limitations set forth in Rule 7.1(f).

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General

19